UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH LEON,

                              Plaintiff,

        -v-

ROCKLAND PSYCHIATRIC CENTER and
PATRICIA SOTO,

                              Defendants.

Case No. 15-CV-5040 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Joseph Leon
Woodbourne, NY
*Pro Se Plaintiff*

Abigail E. Rosner, Esq.
Adam J. Sansolo, Esq.
Michael E. Peeples, Esq.
Jason A. Buskin, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Joseph Leon ("Plaintiff") brings this Action against the Rockland

Psychiatric Center ("RPC"), a psychiatric facility operated by the New York State Office of

Mental Health, and Patricia Soto ("Soto" and collectively with RPC, "Defendants") pursuant to

the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law

("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the Fourteenth

Amendment.[1]  Plaintiff contends that Defendants discriminated against him on the basis of his age.  (*See* Am. Compl. 6 (Dkt. No. 16).)[2]  Defendants have filed a Motion To Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion").  (Dkt. No. 87.)  For the reasons stated below, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, the documents appended thereto, and the filings Plaintiff submitted in opposition to the instant Motion, and are taken as true for the purpose of resolving the Motion.

On September 8, 2014, Plaintiff interviewed for a Mental Health Therapy Aid Trainee position at RPC.  (Am. Compl. 29.)  On September 17, 2014, Soto left a voicemail for Plaintiff explaining that her colleagues asked her to offer Plaintiff a job, but first Soto needed him to "check out some retirement things" because he had disclosed during the interview that he was a member of a New York State Public Pension Fund.  (*Id.* at 21, 35.)  Plaintiff attempted to contact Soto but was unable to reach her so he left messages for her on two answering machines.  (*Id.* at

---

[1] Plaintiff's original Complaint names "New York State, Office of Mental Health, Rockland Psychiatric Center" as the defendant.  In a cover letter to his Amended Complaint, Plaintiff explains that he only wishes to pursue claims against Soto and RPC, and therefore removed any mention of New York State and the Office of Mental Health from the Amended Complaint.  (Am. Compl. 4 (Dkt. No. 16).)  Accordingly, the Clerk of Court is instructed to amend the caption to conform with the above.

[2] The docket reflects that Plaintiff filed two different amended complaints.  (*See* Dkt. Nos. 15–16.)  In a letter to the Court, Plaintiff explained that the amended complaint that was filed later in time was meant to replace the earlier filed document.  (*See* Am. Compl. 1.)  Therefore, for purposes of this Motion, the Court will refer to the later filed document as the Amended Complaint.  (Dkt. No. 16.)

When the Court cites to the Amended Complaint, the page number refers to the PDF page rather than the ECF number found at the top of the page or the page numbers found on the individual documents themselves.

21.)  Plaintiff explained that he had spoken to the "NYS & Local Retirement System" and that there were "no obstacles or conditions of any kind whatsoever that would prevent [Soto] from hiring" him.  (*Id.*)  Plaintiff "clearly" stated that Soto would not have to take any extra steps or actions to hire him because of his retiree status.  (*Id.*)

On September 24, 2014, Soto called Plaintiff and informed him that RPC could not hire him and that he could only be hired as the last person on the civil service list of people who had the same civil service exam score as Plaintiff due to his status as a retiree collecting retirement benefits.  (*Id.*; *see also id.* at 18 ("I was told I would be hired last, from a pool of about 292 people with the same civil service test score, because I'm a civil serv[ice] retiree.").)  Plaintiff contends that this policy is illegal and discriminated against him on the basis of his age.  (*Id.* at 22; *see also id.* at 8 ("The RPC claim that the $30,000 earnings limitation on retirees prevented my hiring is totally false.  Publication V01648 and a letter to me from the retirement system prove that I could have been hired by RPC at any time with no conditions or obstacles or special permissions of any kind whatsoever.").)

Following his phone conversation with Soto, Plaintiff contacted the "NYS and Local Retirement System" and it confirmed "that there [was] no such policy that could be applied to [him]."  (*Id.* at 22.)  Plaintiff then attempted to contact Soto again to explain his findings.  (*Id.*)  She did not answer her phone, so Plaintiff sent her an email explaining that he spoke to the "NYS & Local Retirement System" and the "NYS Civil Service," which confirmed that his status as a retiree would not prevent RPC from hiring him.  (*Id.* at 23.)[3]  Plaintiff also requested

---

[3] Plaintiff attached to his Amended Complaint a document from the Office of the New York State Comptroller, dated September 22, 2015, describing Plaintiff's status as a member of the New York State and Local Employees' Retirement System and the income restrictions imposed on members.  (Am. Compl. 16.)  The document explains that Plaintiff may work in post-retirement public employment if he chooses to do so, but his income will be subject to

that Soto provide the source of the policy that required him to be the last person hired for the job. (*Id.* at 22.)  She did not respond to Plaintiff's calls or email.  (*Id.*)  Plaintiff later learned that other individuals were hired for the position.  (*Id.* at 23.)  In further support of the claim that Soto discriminated against him on the basis of his age, Plaintiff alleges that he was employed for an unidentified period of time at the Mid-Hudson Forensic Psychiatric Center, another psychiatric facility operated by the New York State Office of Mental Health.  (*See* Letter from Plaintiff to Court (Jan. 31, 2016) 12 (Dkt. No. 41).)

After RPC declined to hire Plaintiff, he filed a complaint with the New York State Division of Human Rights ("NYSDHR"), (Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Opp'n") Ex. 5 (Dkt. No. 97)), alleging that RPC discriminated against him on the basis of his age in violation of the ADEA and the NYSHRL, (*id.*).  Specifically, Plaintiff alleged that RPC's decision to defer his application based on his status as a retiree collecting retirement benefits was discriminatory.  (*Id.*)  The NYSDHR determined that "[t]he evidence gathered during the course of [its] investigation [was] not sufficient to support [Plaintiff]'s allegation of discrimination because of age."  (Pl.'s Opp'n Ex. 6.)  In May 2015, the Equal Employment Opportunity Commission adopted the findings of the NYSDHR and informed Plaintiff of his right to file a lawsuit in federal or state court.  (Am. Compl. 10.)

---

earning limits set forth in § 212 of the New York Retirement and Social Security Law. According to the State Comptroller's letter, § 212 limits a retiree's earnings to $30,000 while he collects retirement benefits.  A retiree can make more than the § 212 limit, but he has the obligation to suspend his pension once he reaches that limit.  (*See id.* ("The retiree can make more than the [§] 212 limit and should not prevent the employer [from] hiring a retiree, he/she must suspend the pension once over the limit.  It is the responsibility of the retiree to inform the retirement system that they have reached the limit.").

### B.  Procedural History

Plaintiff filed the Complaint on June 25, 2016.  (Dkt. No. 2.)  The Amended Complaint was filed on October 13, 2015.  (Dkt. No. 16.)  Pursuant to a Scheduling Order issued by the Court on April 7, 2016, (Dkt. No. 69), Defendants filed the Motion and accompanying papers on June 7, 2016, (Dkt. Nos. 87–91).  Plaintiff filed his papers in opposition to the Motion on July 7 and July 12, 2016.  (Dkt. Nos. 97–98.)  Defendants filed their reply brief in further support of the Motion on July 20, 2016.  (Dkt. No. 99.)

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)); *see also Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same), *aff'd*, 591 F. App'x 28 (2d Cir. 2015).  "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a

claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules. *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009).

### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010).  While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider

evidence outside the pleadings, such as affidavits and exhibits.").

### 2.  Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation,

alteration, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.*

(alteration and internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations

must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff

has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint

must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.  But where the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted)

(second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a

notable and generous departure from the hyper-technical, code-pleading regime of a prior era,

but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his or her] complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015).  In deciding a motion to dismiss a pro se complaint, it is appropriate to consider certain "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his [or her] opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717

F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

### B.  Analysis

#### 1.  Plaintiff's Claims Against RPC

Plaintiff contends that RPC violated the ADEA, the NYSHRL, the NYCHRL, and the Fourteenth Amendment because it imposed a hiring policy that discriminated against him on the basis of his age and abridged his privileges and immunities as a citizen of New York State.  (Pl.'s Opp'n 16–17.)  RPC argues that Plaintiff cannot bring suit against it because his claims are barred by the Eleventh Amendment.  (Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") 5–7 (Dkt. No. 88).)  Plaintiff responds that "only the U.S. Supreme Court gets to decide if and when a sovereign immunity claim is valid."  (Pl.'s Opp'n 7.)

"[A]s a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law." *Harrison v. New York*, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015) (internal quotation marks omitted); *see also* U.S. Const. amend. XI.[4]  "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and

---

[4] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

state instrumentalities that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (internal quotation marks omitted). Thus, under the doctrine of sovereign immunity, an individual may not sue a state, its agencies, or its officials in federal court, absent that state's consent or an express statutory waiver of immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *see also McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001) ("[T]here are two recognized exceptions to the [Eleventh Amendment] bar: when Congress authorizes a suit through enforcement of § 5 of the Fourteenth Amendment, and where a state consents to being sued.").

"Although the [Eleventh] Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens." *Woods*, 466 F.3d at 236; *see also Hans v. Louisiana*, 134 U.S. 1, 16 (1890) (holding that sovereign immunity extends beyond the text of the Eleventh Amendment such that a state cannot be sued by one of its own citizens without consent); *McGinty*, 251 F.3d at 91 ("[S]overeign immunity extends beyond the literal text of the Eleventh Amendment to bar a citizen from suing his own state under federal question jurisdiction . . . ."). Furthermore, the Eleventh Amendment "bars suits that seek either money damages or injunctive relief." *McGinty*, 251 F.3d at 91 (citations omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . , a State cannot be sued directly in its own name regardless of the relief sought."); *Cory v. White*, 457 U.S. 85, 91 (1982) ("[T]he Eleventh Amendment by its terms clearly applies to a suit seeking an injunction . . . ."); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("Thus the rule has evolved that a suit by private parties

10

seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.").  The party seeking immunity bears the burden of demonstrating that it is an arm of the state.  *See Gorton v. Gettel*, 554 F.3d 60, 62 (2d Cir 2009) ("The burden is on the party seeking immunity to demonstrate that it is an arm of the state."); *see also Woods*, 466 F.3d at 237 (holding that "the governmental entity invoking the Eleventh Amendment bears the burden of demonstrating that it qualifies as an arm of the state entitled to share in its immunity").

RPC, a state psychiatric facility operated by the New York State Office of Mental Health, has met its burden here.  At least two cases have held that RPC is an arm of the state, s*ee Finn v. N.Y. State Office of Mental Health-Rockland Psychiatric Ctr.*, No. 08-CV-5142, 2011 WL 4639827, at *9–10 (S.D.N.Y. Oct. 6, 2011); *Lewis v. Krymkevich*, No. 07-CV-4583, 2009 WL 4884093, at *2–3 (S.D.N.Y. Dec. 17, 2009), and other courts have found that similar state-run psychiatric institutions constitute arms of the state entitled to Eleventh Amendment immunity, *see, e.g.*, *Limwongse v. N.Y. State Office of Mental Health*, 249 F. App'x 862–63 (2d Cir. 2007) (holding that the Pilgrim Psychiatric Center was a state agency protected by Eleventh Amendment immunity); *Freeman v. Rochester Psychiatric Ctr.*, 12-CV-6045, 2016 WL 851782, at *3 (W.D.N.Y. Mar. 3, 2016) (holding that the Rochester Psychiatric Center was entitled to sovereign immunity); *Braithwaite v. Kingsboro Psychiatric Ctr.*, No. 07-CV-127, 2010 WL 3398962, at *2 (E.D.N.Y. Aug. 26, 2010) (holding, although undisputed by the plaintiff, that the Kingsboro Psychiatric Center was an arm of the state entitled to sovereign immunity).[5]  RPC is therefore entitled to Eleventh Amendment immunity unless there is an express statutory waiver

---

[5] This Court has previously noted that RPC is an arm of the state, although it was undisputed in that case.  *See Henny v. New York State*, 842 F. Supp. 2d 530, 544 (S.D.N.Y. 2012).

contained in one of the statutes upon which Plaintiff relies in bringing this suit or New York

State has consented to suit.  Neither of those exceptions applies here.  The Supreme Court has

held that the ADEA does not abrogate the states' sovereign immunity, *Kimel v. Fla. Bd. of

Regents*, 528 U.S. 62, 91 (2000) ("The ADEA's purported abrogation of the States' sovereign

immunity is . . . invalid."); *see also McGinty*, 251 F.3d at 92 ("[W]hile an aggrieved party can

pursue avenues other than the ADEA when faced with age discrimination, it clearly cannot

mount an ADEA claim against a state without its consent in federal court." (citations omitted)),

and the Fourteenth Amendment, the NYCHRL, and the NYSHRL do not contain express

statutory waivers of New York State's sovereign immunity, *see Feingold v. New York*, 366 F.3d

138, 149 (2d Cir. 2004) (finding that the plaintiff's NYCHRL claim was barred by state

sovereign immunity); *Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 31–32 (2d Cir.

1991) (holding that because the plaintiff's Fourteenth Amendment claim fit "neither the clear

statement nor the state waiver exceptions to a state's immunity" it was barred under the Eleventh

Amendment); *Deadwiley v. N.Y. State Office of Children & Family Servs.*, 97 F. Supp. 3d 110,

116–17 (E.D.N.Y. 2015) (finding that the plaintiff's NYSHRL claim was barred by the Eleventh

Amendment).[6]  Nor has New York State waived its sovereign immunity.  *Bryant v. N.Y. State

Dep't of Corr. Servs. Albany*, 146 F. Supp. 2d 422, 425 (S.D.N.Y. 2001) (noting it is "beyond

dispute" that New York and its agencies have not consented to being sued in federal court

(internal quotation marks omitted)).  Accordingly, Plaintiff's claims against RPC are dismissed

---

[6] To the extent that Plaintiff is attempting to raise a claim against the RPC pursuant to 42 U.S.C. § 1983, that claim is similarly barred by sovereign immunity.  *See Lane v. N.Y. State Office of Mental Health*, No. 11-CV-1941, 2012 WL 94619, at *2 (S.D.N.Y. Jan. 11, 2012) (holding that Congress, through § 1983, did not "abrogate[] the state's immunity").

with prejudice, as no amendment to the Amended Complaint can change the legal status of RPC as a state entity entitled to sovereign immunity.

### 2.  Plaintiff's Claims against Soto

Plaintiff alleges that Soto instituted a fictitious policy that prevented him from being hired by RPC and discriminated against him on the basis of his age in violation of the ADEA, the NYSHRL, and the NYCHRL.  (Am. Compl. 6, 8.)  Plaintiff also contends that Soto violated his Fourteenth Amendment right to earn a living at the facility of his choice and denied him due process of law.  (Pl.'s Opp'n 16.)  The Court interprets Plaintiff's opposition papers to raise two different Fourteenth Amendment claims: (1) a claim based upon the Equal Protection Clause and (2) a claim based upon the Due Process Clause.  (*Id.*)  For these violations, Plaintiff seeks compensatory damages and injunctive relief, i.e., a job offer.  (Am. Compl. 9.)[7]  The Court addresses all of these claims in turn below.

### a.  Plaintiff's Fourteenth Amendment Claims

### i.  Equal Protection

Plaintiff contends that he was treated differently than others in "similar conditions and circumstances" in violation of the Equal Protection Clause because Soto told him that he could only be hired "last from a group of 321 people" since he was receiving retirement benefits.  (Pl.'s Opp'n 16; Am. Compl. 18 ("I was told I would be hired last, from a pool of about 292 people with the same civil service test score, because I'm a civil serv[ice] retiree.").)  Defendants argue

---

[7] Plaintiff states that he is no longer seeking injunctive relief based upon a conversation he had with opposing counsel.  (Pl.'s Opp'n 24.)  Defendants' counsel denies ever telling Plaintiff he could not seek an injunction.  (Letter from Abigail Rosner, Esq., to Court (Mar. 15, 2016) (Dkt. No. 57).)  As explained in further detail below, Plaintiff is within his rights to seek an injunction and the Court considers his request proper notwithstanding anything that Defendants' counsel allegedly told him.

that Plaintiff's claim must be dismissed because he has not pled that he was treated differently from similarly situated individuals based on a protected status.  (Defs.' Reply Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Reply") 3 (Dkt. No. 99).)

"Age is not a protected class under the Fourteenth Amendment's Equal Protection Clause."  *Shein v. N.Y.C. Dep't of Educ.*, No. 15-CV-4236, 2016 WL 676458, at *6 (S.D.N.Y. Feb. 16, 2016).  Where a plaintiff is not a member of a constitutionally protected class, he may nonetheless bring an equal protection claim pursuant to one of two theories:  "class of one," or selective enforcement.  *Witt v. Village of Mamaroneck*, 992 F. Supp. 2d 350, 359 (S.D.N.Y. 2014).  The Second Circuit and the Supreme Court, however, have advised that a class-of-one claim is not cognizable in the public employment context.  *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605–09 (2008); *Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008) (holding that, in light of *Engquist*, "the Equal Protection Clause does not apply to a public employee asserting a violation . . . based on a 'class of one' theory of liability"); *see also Conyers v. Rossides*, 558 F.3d 137, 152 (2d Cir. 2009) (affirming the dismissal of a class-of-one claim in light of *Engquist*, where the plaintiff alleged generally that a government "agency treated a prospective employee differently from others for a bad reason, or for no reason at all" (alterations and internal quotation marks omitted)); *Heusser v. Hale*, 777 F. Supp. 2d 366, 384 (D. Conn. 2011) ("*Engquist* applies equally to hiring decisions . . . .).  Plaintiff's Equal Protection claim must therefore be based upon a selective enforcement theory.

An equal protection claim premised on selective enforcement requires a showing that:

(1) [the plaintiff], compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff.

*Witt*, 992 F. Supp. 2d at 362 (alteration omitted) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).  "A plaintiff generally must satisfy both elements to establish a claim of selective enforcement," *LaTrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999), though there is some disagreement within the Second Circuit regarding the degree of similarity necessary to adequately allege an Equal Protection claim under this theory, *see Butler v. Bridgehampton Fire Dist.*, No. 14-CV-1429, 2015 WL 1396442, at *4 (E.D.N.Y. Mar. 25, 2015) (recognizing the "split regarding the definition of 'similarly situated' in selective enforcement and class-of-one cases").  While some courts evaluate whether a comparator is similarly situated under the same standard used in "class of one" equal protection claims, *see, e.g.*, *Kamholtz v. Yates County*, No. 08-CV-6210, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008) (noting that "[t]he level of similarity between [the] plaintiffs and the persons with whom they compare themselves must be extremely high" in both the selective enforcement and "class of one" contexts (internal quotation marks omitted)), *aff'd*, 350 F. App'x 589 (2d Cir. 2009), others apply a less demanding standard to selective enforcement claims, *see, e.g.*, *Tower Props. LLC v. Village of Highland Falls*, No. 14-CV-4502, 2015 WL 4124499, at *8 (S.D.N.Y. July 7, 2015) (adopting "a less stringent standard" whereby the "[p]laintiff must identify comparators whom a prudent person would think were roughly equivalent" (alterations and internal quotation marks omitted)); *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008) (explaining that a selective enforcement claim requires a plaintiff and comparator to be "similarly situated in all material respects" (internal quotation marks omitted)).

Even applying the less stringent standard, the Court finds that Plaintiff has failed to adequately allege others "similarly situated."[8]  Although the analysis of whether a comparator is similarly situated may present a question of fact inappropriate to decide at the motion-to-dismiss stage, *see Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 705 n.17 (S.D.N.Y. 2011), here, the Amended Complaint does not present a plausible claim as Plaintiff has failed to allege sufficient facts regarding any comparators, *see Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) ("While a plaintiff is not required to proffer evidence of similarly situated individuals at the motion to dismiss stage, the court 'still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.'" (quoting *Mosdos*, 815 F. Supp. 2d at 697–98)).  For example, while Plaintiff alleges that he was treated differently than the other individuals who applied to work for RPC based on his age, Plaintiff has not pled that someone younger than him was hired, or that Soto did in fact favor younger individuals over him.  All that he has pled about the individuals with whom he wishes to compare himself is that some of those individuals had the same civil service test score.  (*See* Am. Compl. 18.) Furthermore, Plaintiff alleges that the RPC hired people to fill the position to which he applied, but he has not pled any facts regarding the individuals who were ultimately hired.  (*Id.* at 23.)

---

[8] The Second Circuit has recognized that there is a question as to whether selective enforcement claims in the public employment context survived *Engquist*, but it has not yet decided the issue.  *See Kamholtz v. Yates Cty.*, 350 F. App'x 589, 591 (2d Cir. 2009).  Thus, "the law in this Circuit is unsettled as to whether public employees' claims asserted under the 'selective enforcement' theory can survive in light of *Engquist*."  *Sharpe v. City of New York*, No. 11-CV-5494, 2013 WL 2356063, at *4 n.6 (E.D.N.Y. May 29, 2013), *aff'd*, 560 F. App'x 78 (2d Cir. 2014).  Despite the persuasive reasoning of the district courts that have held selective enforcement claims are barred in the public employment context, *see, e.g.*, *Heusser*, 777 F. Supp. 2d at 386–87 (noting that lower courts have "consistently moved" in the direction of barring selective enforcement claims in the public employment context), this Court, in an abundance of caution, will address the merits of Plaintiff's selective enforcement claim.

Thus, the conclusory allegation that he was treated differently than some other group of people is insufficient for a jury to ultimately determine that the supposed comparators are similarly situated.  *See Mosdos*, 815 F. Supp. 2d at 698 ("[C]onclusory allegations of selective treatment are insufficient to state an equal protection claim." (internal quotation marks omitted)); *see also Butler*, 2015 WL 1396442, at *5 (dismissing equal protection claim where the "[c]omplaint only discusse[d] the harmful actions [the defendants] took with respect to [the] [p]laintiff," yet offered "no discussion whatsoever of any similarities between [the] [p]laintiff and others"); *DePrima v. City of N.Y. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *6 (E.D.N.Y. Mar. 20, 2014) (dismissing selective enforcement claim where the plaintiff's allegations lacked "any facts showing that [certain individuals were] similarly situated to [the] [p]laintiff" (emphasis omitted)); *Segreto v. Town of Islip*, No. 12-CV-1961, 2014 WL 737531, at *7–8 (E.D.N.Y. Feb. 24, 2014) (dismissing equal protection claim where the "[p]laintiffs merely allege[d] that others [were] allowed to get permits, but it [wa]s unclear whether those properties ha[d] any circumstances similar to [the] [p]laintiffs").

In sum, Plaintiff alleges that he was treated differently than similarly situated individuals on the basis of his age, but he has not alleged the ages, or any other relevant characteristics, of those individuals.  Accordingly, Plaintiff's Equal Protection claim is dismissed.

### ii.  Due Process

In his opposition papers, Plaintiff contends that Defendants have "deprived [him] of the right to earn a living of [his] choice at [RPC], and earn money to buy things, and are attempting

to deny [him] the due process of law to fight in court for [his] living of choice."  (Pl.'s Opp'n 16.)  The Court interprets this argument as an attempt to raise a procedural due process claim.[9]

"To succeed on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected interest; (2) that the State deprived him of this interest; and (3) that the deprivation was effected without due process of law."  *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009); *see also Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) ("The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution and, if so, what process was due before the plaintiff could be deprived of that interest.").

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  Instead, a plaintiff "must . . . have a legitimate claim of entitlement to" the benefit.  *Finely v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996) (internal quotation marks omitted).  As a general rule, "there is no constitutionally protected property interest in prospective government employment."  *Abramson v. Pataki*, 278 F.3d 93, 100 (2d Cir. 2002); *see also Coogan v. Smyers*, 134 F.3d 479, 487 (2d Cir. 1998) (finding that the plaintiff was a prospective employee and therefore "had no property right or entitlement to

---

[9] It is also possible that Plaintiff is attempting to raise a substantive due process claim.  "For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (internal quotation marks omitted).  Plaintiff has failed to state a substantive due process claims because the facts alleged in the Amended Complaint are not so outrageous as to shock the contemporary conscience.  *Cf. Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 354 (E.D.N.Y. 2013) (dismissing substantive due process claim based upon workplace discrimination because "the fact that the discrimination was allegedly committed by a government entity does not transform the[] employment discrimination claims into violations of substantive due process").

the position" he was seeking); *Almontaser v. N.Y.C. Dep't of Educ.*, No. 07-CV-10444, 2009 WL 2762699, at *4 (S.D.N.Y. Sept. 1, 2009) ("[T]here is no constitutionally protected property interest in prospective government employment, and a job applicant therefore has no property interest in the position for which she applies." (internal quotation marks omitted)).  But, in some circumstances, a written or verbal communication guaranteeing government employment may give rise to a protected property interest.  *See Looney v. Black*, 702 F.3d 701, 708 (2d Cir. 2012) (collecting cases where written and verbal promises "about specific conditions during [a] future term of . . . employment" created a protected property interest); *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 783 (2d Cir. 1991) (holding that the defendant's repeated statements that the plaintiff would be promoted and the plaintiff's reliance on those statements "created a contractual right that rose to the level of a significant property interest"); *see also Cancel v. N.Y.C. Human Res. Admin./Dep't of Soc. Servs.*, 527 F. App'x 42, 44 (2d Cir. 2013) ("Generally there is no constitutionally protected property interest in prospective government employment, but a written or verbal communication guaranteeing government employment may, in some circumstances, give rise to such a property interest." (citation and internal quotation marks omitted)).

Even if a plaintiff cannot demonstrate a property interest, "[l]iberty, as enshrined in the Fourteenth Amendment, is a broad notion, and one of the freedoms it encompasses is the freedom to engage in any of the common occupations of life."  *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996) (internal quotation marks and citation omitted); *see also Cityspec*, 617 F. Supp. 2d at 169 ("The liberty interests protected by the Fourteenth Amendment include the freedom to engage in any of the common occupations of life." (internal quotation marks omitted)).  This right, however, is "not [so] broad as to protect

the right to a particular job." *Cityspec*, 617 F. Supp. 2d at 169; *see also Roth*, 408 U.S. at 575

("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply

is not rehired in one job but remains as free as before to seek another.").

 In this case, as a job applicant, Plaintiff was a prospective employee.  Following an

interview, Soto called Plaintiff and explained that she was told to offer him a job but first needed

him to "check out some retirement things."  (Am. Compl. 21.)  Plaintiff never received a job

offer because Soto determined that RPC could not hire him due to the fact that he was receiving

retirement benefits.  Therefore, Plaintiff does not have a constitutionally protected property

interest in his employment with RPC.  *See Abramson*, 278 F.3d at 100 (holding that prospective

government employment does not create a constitutionally protected property interest); *Coogan*,

134 F.3d at 487 (holding that the plaintiff did not have a property right or entitlement to a

government position because he was a prospective employee); *see also Crenshaw v. City of New

Haven*, 652 F. App'x 58, 60 (2d Cir. 2016) (concluding that the plaintiff did not possess a

constitutionally protected property interest even though he had a "'conditional offer' of

employment" because he was "no more than a *prospective employee*").

 Nor has Plaintiff pled that Soto deprived him of a constitutionally protected liberty

interest.  Nothing about Soto's decision to withhold an offer prevents Plaintiff from seeking

employment with any other employer.  *Cf. Crenshaw v. City of New Haven*, No. 14-CV-1249,

2015 WL 5797018, at *9 (D. Conn. Sept. 30, 2015) (finding that the plaintiff did not have a

liberty interest in employment as a firefighter because he "d[id] not . . . allege that his removal

from a single eligible list effectively bar[red] him from being a firefighter"), *aff'd*, 652 F. App'x

58 (2d Cir. 2016); *Jones v. City Sch. Dist. of New Rochelle*, 695 F. Supp. 2d 136, 146 (S.D.N.Y.

2010) ("Prospective employment does not confer a liberty interest because [the plaintiff] is not

entitled to this employment with the [defendant]; indeed, [the plaintiff] is not entitled to employment with any particular employer.").

Because Plaintiff has failed to plead a constitutionally protected liberty or property interest, the Court need not determine whether he was deprived of such an interest without due process of law.  Accordingly, Plaintiff's Due Process claim is dismissed.

### b.  Plaintiff's ADEA Claim

The ADEA provides in part that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's age."  29 U.S.C. § 623(a).  "To establish a prima facie case [under the ADEA], a plaintiff . . . must show (1) that [he or] she was within the protected age group, (2) that [he or] she was qualified for the position, (3) that [he or] she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination."  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (internal quotation marks omitted); *see also Barker v. Ellington Bd. of Educ.*, No. 12-CV-313, 2013 WL 6331159, at *10 (D. Conn. Dec. 5, 2013) (same).  Significantly, "there is no individual liability under . . . the ADEA."  *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007); *see also Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) ("[D]ismissal of the Title VII and ADEA claims against the individual [d]efendants was appropriate as neither statute subjects individuals . . . to personal liability.").  Accordingly, Plaintiff's ADEA claim against Soto, to the extent that it is brought against her in her individual capacity, is dismissed.

Furthermore, to the extent that Plaintiff's ADEA claim is against Soto in her official capacity as an Associate Personnel Administrator of RPC, Plaintiff's claim for damages is barred by the Eleventh Amendment.  *See Perciballi v. New York*, No. 09-CV-6933, 2010 WL 3958731,

at *4 (S.D.N.Y. Sept. 28, 2010) ("[T]he Eleventh Amendment bars [the plaintiff's] damages claims against the [i]ndividual [d]efendants in their official capacities."); *Fox*, 497 F. Supp. 2d at 450 (stating that claims for damages against state officials in their official capacities are barred by the Eleventh Amendment).

Plaintiff may, however, seek an injunction for prospective relief, i.e., an offer of future employment, against Soto in her official capacity.  *See In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("[U]nder the venerable doctrine of *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective injunctive relief from violations of federal law." (citation and internal quotation marks omitted)); *Griffith v. N.Y. State Dep't of Health*, No. 14-CV-1128, 2015 WL 4545991, at *7 (W.D.N.Y. July 28, 2015) ("Various courts in this circuit have recognized the legal viability of official capacity ADEA claims provided the claims seek only prospective injunctive relief.").[10]  Assuming that Plaintiff has stated a claim under the ADEA—Defendants do not challenge Plaintiff's Amended Complaint on that ground—an injunction against Soto is inappropriate because Plaintiff has not pled that she has the authority or ability to offer him a job with RPC.  *See Griffith*, 2015 WL 4545991, at *7 (dismissing claims brought against some individual defendants under the ADEA because the plaintiff failed to allege that they had the relevant appointing authority); *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014) (stating that the *Ex parte Young* "exception to sovereign immunity only authorizes suit against officials with the authority to provide the requested relief" and dismissing

---

[10] Even though Plaintiff has not stated that he is suing Soto in her individual and official capacities, interpreting Plaintiff's allegations to raise the broadest claims that they suggest, the Court assumes that Plaintiff has sued Soto in her official capacity pursuant to the *Ex parte Young* exception to sovereign immunity and in her individual capacity.

claims against the defendants who did not have the authority to reinstate the plaintiff or provide

the other injunctive relief he sought); *Perciballi*, 2010 WL 3958731, at *4 (dismissing the

plaintiff's request for reinstatement where there was no allegation that any individual defendant

had the authority to reinstate him).  While Plaintiff states that Soto attended his interview and

"played some role in the hiring process," (Letter from Plaintiff to Court (June 17, 2016) 8 (Dkt.

No. 96)), that is not the same as pleading that Soto can offer him a job at RPC if the Court orders

her to do so.

> Accordingly, Plaintiff's ADEA claim is dismissed without prejudice.

### c.  Plaintiff's NYSHRL Claim

> Plaintiff alleges that Soto discriminated against him on the basis of his age in violation of

the NYSHRL.  Defendants argue that Plaintiff's NYSHRL claim is barred because he filed a

claim with the NYSDHR alleging age discrimination before filing this Action.  (Defs.' Mem. 8–

9.)

> As relevant here, the NYSHRL provides:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall
> have a cause of action in any court of appropriate jurisdiction for damages . . . and
> such other remedies as may be appropriate, . . . unless such person had filed a
> complaint hereunder or with any local commission on human rights . . . .

N.Y. Exec. Law § 297(9).  The Second Circuit has interpreted this section to mean that

NYSHRL claims "may not be brought again as a plenary action in another court" if they are first

brought before the NYSDHR.  *York v. Ass'n of Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir.

2002).  Once a case is brought before the NYSDHR, a plaintiff "may appeal only to the Supreme

Court of the State of New York."  *Id.*  Therefore, to the extent that Plaintiff submitted his claims

to the NYSDHR, they are barred.

Plaintiff contends that he did not elect to bring his claims before the NYSDHR, (Pl.'s

Opp'n 24), but this argument is belied by the documents he attached to the Amended Complaint

and submitted in opposition to Defendants' Motion.  Plaintiff has submitted a copy of the

verified complaint he filed with the NYSDHR alleging age discrimination, (Pl.'s Opp'n Ex. 5), a

letter dated October 20, 2014 from the NYSDHR acknowledging receipt of the complaint, (*id.*), a

copy of his rebuttal submission before the NYSDHR, (Pl.'s Opp'n Ex. 7), and a copy of the

NYSDHR's determination, (Pl.'s Opp'n Ex. 6).  Plaintiff also included a letter from the

NYSDHR, dated October 16, 2014, which informed Plaintiff that the NYSDHR could not

process his complaint because it was incomplete and instructed him to complete a new complaint

form.  At the bottom of this letter, Plaintiff has hand-written that he "never filled out or returned

the complaint form referred to, or any other complaint form, in response to this letter."  (Letter

from Plaintiff to Court (July 9, 2016) Ex. 23 (Dkt. No. 98).)  Even if Plaintiff did not respond to

this letter, the NYSDHR acknowledged receipt of Plaintiff's complaint on October 20, 2014

without identifying any defects, (Pl.'s Opp'n Ex. 5), and Plaintiff thereafter submitted an

opposition to Defendants' submission, (Pl.'s Opp'n Ex. 7).  If Plaintiff's complaint was in some

way deficient when it was first filed, the NYSDHR's ultimate determination and Plaintiff's

participation in that process show clearly that Plaintiff filed a complaint and that complaint was

acted on by the NYSDHR.

Accordingly, Plaintiff's NYSHRL claim is dismissed with prejudice.

### d.  Plaintiff's NYCHRL Claim

Plaintiff, a resident of Sullivan County, NY, alleges that Soto discriminated against him

on the basis of his age in violation of the NYCHRL.  "To state a claim under the NYCHRL, the

[p]laintiff must allege that the [d]efendant discriminated against h[im] within the boundaries of

New York City." *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) (internal quotation marks omitted); *see also Fried v. LVI Servs., Inc.*, No. 10-CV-9308, 2011 WL 4633985, at *12 (S.D.N.Y. Oct. 4, 2011) ("The NYCHRL expressly limits the applicability of its protections to acts that occur within the boundaries of New York City."), *aff'd*, 500 F. App'x 39 (2d Cir. 2012).  Plaintiff cannot satisfy this requirement because the RPC is located in Rockland County, not New York City.  Therefore, Plaintiff's NYCHRL claim is dismissed with prejudice.

### III.  Conclusion

Based on the foregoing analysis, the Court grants Defendants' Motion in its entirety. Plaintiff's claims against the RPC and his NYSHRL and NYCHRL claims are dismissed with prejudice.  However, Plaintiff's Fourteenth Amendment and ADEA claims are dismissed without prejudice.  Plaintiff is given 30 days to file a Second Amended Complaint curing the deficiencies identified in this Opinion.  Failure to honor this deadline could result in dismissal of the Action with prejudice.  In a Second Amended Complaint, Plaintiff must include all of his claims against any defendants within that pleading and should not rely on letters to the Court to add claims after the complaint is filed.

Additionally, Defendants are given 15 days from the date of this Opinion to notify the Court as to the status of any litigation between Defendants and Plaintiff in state court.[11]

---

[11] Plaintiff has filed a suit against RPC and Soto in state court.  (Letter from Plaintiff to Court (May 27, 2016) 2 (Dkt. No. 86).)  Plaintiff appeared in New York State Supreme Court in June 2016 for oral argument in that case.  (Letter from Plaintiff to Court (June 17, 2016) 1 (Dkt. No. 96).)

The Clerk of Court is respectfully requested to modify the caption to conform with the

caption as it appears at the beginning of this Opinion and to terminate the pending Motion. (Dkt.

No. 87.)

SO ORDERED.

Dated: February ⟡, 2017
       White Plains, New York

KENNETH M. KARAS
United States District Judge

26